THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAR-RYL BELL, Defendant-Appellant.

First District (3rd Division)   No. 1—91—1684

Opinion filed June 21, 1995.

440

James J. Cutrone, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Katherine Schweit, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

A jury convicted defendant Darryl Bell of possession of a controlled substance with intent to deliver and armed violence. He was sentenced to 60 years' imprisonment and judgment was entered. We vacate the armed violence conviction and affirm the remainder of the judgment.

At 7 a.m. on December 29, 1989, Chicago police officer Ashley Miller received a radio call to meet a battery victim at a specified location. He responded and met with the victim, Deborah Robinson. She told him that defendant had beaten her and that he was at her apartment at 71st and Bennett, although he did not live there. She also said that he was violent. Miller called for a back-up officer, and Officer Stanley Gas responded. The three of them then went to the apartment.

After Robinson opened the apartment door with her key, she and the police officers saw defendant slouched on the couch in his underwear and a T-shirt. Robinson said, "That's him." Defendant appeared to be in an unconscious state. Near the defendant, there was a valise with a gun handle sticking out.

Miller grabbed defendant and placed him under arrest. Miller

then searched the valise and found a .38-caliber revolver with five live rounds of ammunition, $3,985 in cash, two clear bags of a white powder substance, glass drug pipes, a scale, a letter, two receipts and an address book. Both receipts, the letter, and the address book had defendant's name on them.

Defendant was taken to the third district police station, along with the evidence. At the police station, all items were inventoried and placed in a safe.

At trial, a Chicago police department forensic chemist, Arthur Kruske, testified that the white powder in the two bags was cocaine and that the two bags of cocaine weighed 210.71 grams and 49.77 grams, respectively. Defendant did not testify.

■ On appeal, defendant first contends that the trial court erred in not complying with the supreme court's holding in *People v. Zehr* (1984), 103 Ill. 2d 472, 469 N.E.2d 1062. In *Zehr*, the court held that the trial court's failure to ask three *voir dire* questions by the defense constituted reversible error. These three *Zehr* questions are:

"1. If at the close of all the evidence and after you have heard arguments of counsel you believe that the State has failed to sustain the burden of proof and has failed to prove the defendant guilty beyond a reasonable doubt, would you have any hesitation whatsoever in returning a verdict of Not Guilty?

2. If the defendant, Mr. Zehr, decides not to testify in his own behalf, would you hold it against him?

3. Do you understand that the defendant is presumed innocent and does not have to offer any evidence in his own behalf, but must be proven guilty beyond a reasonable doubt by the State?" 103 Ill. 2d at 476, 469 N.E.2d at 1063-64.

In the present case, the trial court questioned the venire en masse as follows:

"Anybody have any quarrel with the principle of law which requires the state to prove the defendant guilty beyond a reasonable doubt? Any problem with that?

The defendant may or may not testify. He is not required to do so. He may or may not present witnesses on his behalf. Will this create any prejudice in your mind against the defendant? Do you have any quarrel with the principle of law that the defendant is presumed innocent until proven guilty beyond a reasonable doubt?

Do you have any bias or prejudice against the defendant simply because he has been charged with a crime?

Will all of you keep an open mind until you have heard all the evidence in the case? In other words, we wouldn't want you deciding this case halfway through the evidence. You will wait until you heard all the evidence and all the arguments of counsel before

arriving at a decision? Of course, through your deliberations. Any problem with that at all?

As you sit there now, is there anything about the nature of this case which would prevent you from being fair and impartial jurors and in deciding this case on the evidence and on the instructions of the law?

So you are all telling me you will give all the parties a fair and impartial trial, right?

Now, I will instruct you as to the law at the close of the case. Will you apply this law without regard to what your personal feelings may be about that law, and if I tell you this is the law, this is the law you have to apply, will anybody have a problem doing that, even though you may figure I don't think that law is fair. If I tell you that's the law, will you apply it? Okay.

One other question. Do any of you have any members of your immediate family who have received treatment for chemical dependency such as alcohol or drugs?

Now, the fact that you may have had this problem, I will bring it up again, is this in any way going to affect your ability to listen to the evidence, and of course, base your decision fairly and impartially on the evidence and the law as you hear and see it? Is that going to affect your ability to be fair and impartial? You can all be fair and impartial?

\* \* \*

I'm going to say this for the benefit of all the jurors both in and out, and you can indicate by raising your hand if you have a problem.

If the state carries its burden and they prove that the defendant is guilty beyond a reasonable doubt, would anybody have a problem signing a guilty verdict? The other side, if the state fails to carry their burden and they do not prove that the defendant is guilty beyond a reasonable doubt, would anybody have a problem signing a not guilty verdict? Okay."

There was no negative response to the trial court's inquiry. Nonetheless, defense counsel asked the trial court to ask each of the prospective jurors individually the following questions:

"Do you understand the law presumes the defendant to be innocent and the indictment is not any evidence of guilt?

Do you have any problem with that rule law?

Would you hold it against the defendant if he elects not to testify in this case?

Would you believe \*\*\* he has something to hide?

Is there anything about the nature of the charges themselves, particularly narcotics, which prejudices you one way or another?"

The trial court refused defense counsel's request. The trial court concluded that the subject matters of the questions posed by defense counsel were covered sufficiently when it questioned the jury en masse.

Defendant argues that the trial court did not comply with *Zehr* because it refused to question the prospective jurors individually rather than en masse and because it refused to ask: "Would you believe *** he has something to hide?" In addition, defendant argues that *Zehr* was not complied with because the trial court did not ask the prospective jurors individually: "Is there anything about the nature of the charges themselves, particularly narcotics, which prejudices you one way or another." We disagree with defendant.

*Zehr* does not require the trial court to question the venire individually and there is no such rule in the law. Plainly, the trial court has the discretion to question the venire individually or en masse. (*People v. Volkman* (1992), 235 Ill. App. 3d 888, 890, 601 N.E.2d 1179, 1181-82.) In addition, it is clear that the subject matters of all the questions posed by defense counsel were amply covered in the trial court's interrogation of the jury en masse and there is nothing to indicate that further inquiry was needed. (See *People v. Emerson* (1987), 122 Ill. 2d 411, 426, 522 N.E.2d 1109, 1114.) As a result, there is no merit to defendant's first contention.

■ Defendant next contends that the trial court erred in admitting the narcotics into evidence because "the chain of custody of the exhibits was not properly established." The narcotics in question involved the cocaine that was found in the two white bags.

Miller and Kruske testified as to the chain of custody of the cocaine. Miller testified that he put the cocaine in the safe after it was inventoried in accordance with police department procedures. The cocaine was given to Kruske in an evidence envelope by a department supervisor. Kruske received the evidence for examination. After testing, Kruske returned the cocaine in the evidence envelope to the safe. Miller testified that all the items that were inventoried at the police station were in substantially the same condition as when he put them into the safe. Kruske testified that the evidence envelope was in the same or substantially same condition as it was when he returned it after testing.

Defendant was allowed to fully cross-examine Miller and Kruske with regard to their initials that were placed on the inventory packages and any perceived discrepancies in their testimony. Moreover, defendant cannot point to and does not even allege any alteration, tampering or contamination of the evidence.

Under the circumstances presented here, the issue of the suffi-

ciency of the chain of custody for admission of the narcotics evidence is properly left to the discretion of the trial court. (*People v. Holman* (1987), 157 Ill. App. 3d 764, 775, 510 N.E.2d 1139, 1146.) Absent an abuse of discretion, the trial court's ruling will not be disturbed. (*People v. Irpino* (1984), 122 Ill. App. 3d 767, 773, 461 N.E.2d 999, 1004.) Since there is no showing of an abuse of discretion in the present case, the defendant's contention that the chain of custody of the narcotics evidence was not sufficiently established is unavailing. The trial court's ruling will not be disturbed.

■ Defendant also contends that "the State should not have been permitted to introduce evidence that the defendant had beaten Deborah Robinson." Prior to trial, defendant made a motion to bar the State from introducing evidence that Robinson had been beaten by defendant. The motion was denied. Defendant claims that the denial of the motion was error because it improperly allowed evidence of other crimes to be introduced at trial. We disagree with defendant's claim.

Evidence of other crimes or wrongful conduct is not admissible to show the defendant's character or propensity to commit a crime or wrongful act. Where evidence has no value beyond the inference that the defendant has a propensity to commit the crime charged, the evidence is excluded. The law distrusts the inference that because a man has committed other crimes, he is more likely to have committed the crime charged. Evidence of other crimes is admissible, however, if it is relevant for any purpose other than to show the defendant's character or propensity to commit a crime. Thus, evidence of other crimes is admissible to show the circumstances or context of defendant's arrest. *People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 484-85, 485 N.E.2d 1292, 1296.

Here, Miller testified that he responded to a radio call to meet a battery victim at a specified location. When he arrived at the location where he was to meet the victim, he met Robinson. She told him that she was beaten by defendant and that defendant was violent. She also told him that defendant was at her apartment. Miller called for a back-up police officer, and both officers went to the apartment to determine whether defendant should be arrested. Upon entering the apartment, the police officers saw defendant, a gun and the narcotics evidence. Under the circumstances, evidence that Robinson had been beaten by defendant was relevant and properly admitted to show the circumstances and context of defendant's arrest in the apartment. The trial court's ruling was therefore proper.

■ Next, defendant claims that the prosecutor committed error during closing argument to the jury. During his closing argument, defense counsel told the jury:

"I do not know why the State did not want to share it with you, but I don't suspect any policeman in this case or anybody else for this matter has seen or heard of this Debra Robinson before or after December 29, 1989."

In response to defense counsel's statement, the prosecutor told the jury that Robinson may have fled, *i.e.*, was not available for trial, because she was afraid of defendant. Defendant's claim that the prosecutor's statement to the jury was improper is without merit because the statement was properly made in response to what was said by defense counsel.

■ Defendant also complains that during his closing argument the prosecutor told the jury that the defendant was a dangerous person. However, a prosecutor may comment on reasonable inferences drawn from the evidence. Here, the prosecutor's comment was a reasonable inference from the evidence at trial. No error was committed.

■ In addition, defendant claims that the prosecutor erred when in his closing argument he told the jury that the police officers risked their lives when they entered the apartment. Here again, the prosecutor's comment was a reasonable inference from the evidence at trial and was therefore not by itself improper. We find no error in the prosecutor's closing argument to the jury.

■ Lastly, defendant contends that the prosecutor committed reversible error during his closing argument when he made the following statements:

"Ladies and gentlemen, the only evidence before you is the officers who testified—.

\* \* \*

The only evidence you have, ladies and gentlemen, is that this is pure cocaine, and the only evidence you have before you, ladies and gentlemen—.

\* \* \*

He must be found guilty, ladies and gentlemen \*\*\* because the evidence from the witness stand, the evidence before you \*\*\*."

Defendant argues that the prosecutor's statements "drew attention to the defendant's failure to testify." We disagree with defendant's conclusion and argument.

A defendant's right to remain silent is not violated by a prosecutor unless a direct or indirect reference is made to defendant's failure to testify and that reference is designed to draw the jury's attention to the fact that defendant chose not to testify. The prosecution may, however, describe the State's evidence as uncontradicted,

provided the statement was not intended or calculated to direct the attention of the jury to the defendant's failure to testify. See *People v. Lyles* (1985), 106 Ill. 2d 373, 389-90, 478 N.E.2d 291, 297.

In the present case, the prosecutor merely made reference to the fact that the State's evidence was uncontradicted. He did so apparently in response to defense counsel's comments that "there is no way you can find this man guilty unless, in fact, you believe that tale." We find no error in the prosecutor's closing argument to the jury.

■ After the jury returned verdicts of guilty on the charges of possession of a controlled substance with intent to deliver and armed violence, the trial judge stated that "on Count II there will not be a judgment on the armed violence *** that should merge into the possession with intent to deliver." Nonetheless, the judgment erroneously provides that defendant was convicted and sentenced on the armed violence conviction.

Since a defendant may not be convicted of more than one offense where one physical act forms the basis for both offenses, and in the present case the trial judge clearly intended not to sentence on the armed violence charge, we vacate defendant's conviction for armed violence. The judgment is otherwise affirmed.

Accordingly, that part of the judgment for conviction and sentencing of armed violence is vacated; the remainder of the judgment is affirmed.

Vacated in part; affirmed in part.

TULLY and CERDA, JJ., concur.